Filed 7/9/24  P. v. Curiel CA5
Opinion following transfer from Supreme Court

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JUAN ALONSO CURIEL, <br><br> Defendant and Appellant. | F081143 <br><br> (Super. Ct. No. VCF170009A) <br><br> **OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Kathryn T. Montejano, Judge.

Charles M. Bonneau, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Eric Christoffersen, Christina H. Simpson, Amanda D. Cary, and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P. J., Poochigian, J. and Detjen, J.

# INTRODUCTION

Petitioner Juan Alonso Curiel petitioned the trial court, pursuant to former section 1170.95 (now § 1172.6) of the Penal Code,[1] for resentencing on his conviction for first degree murder (§ 187, subd. (a)). The trial court summarily denied the petition at the prima facie stage on the ground the jury's verdict, including its true finding on a discharge of a firearm from a vehicle special circumstance allegation (§ 190.2, subd. (a)(21)), required the jury to find petitioner harbored the intent to kill and therefore established his ineligibility for resentencing as a matter of law. On appeal, petitioner contends the court erred in denying his petition because (1) his constitutional right to be personally present at the prima facie hearing was violated; (2) he was convicted of murder under the doctrine of transferred intent, which he describes as an invalid theory of imputed malice; and (3) he was convicted of attempted murder under an improper "kill zone" theory and without a finding of intent to kill.

In our initial opinion, we held that petitioner did not have a constitutional right to be personally present at the prima facie hearing. We further held the petition was properly denied because petitioner is ineligible for resentencing on his murder conviction as a matter of law. In reaching this holding, we relied in part on the jury's special circumstance finding. We declined to address petitioner's convictions for attempted murder on the ground petitioner had not sought resentencing on these convictions in the petition filed in the trial court. Accordingly, we affirmed the order denying the petition.

Petitioner petitioned the California Supreme Court for review. The high court granted review (S274467) and eventually transferred the matter to us with directions to vacate our opinion and reconsider the cause in light of *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*). Pursuant to the high court's order, we vacated our prior opinion. The

---

[1] Undesignated statutory references are to the Penal Code. Former section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the current section 1172.6 in this opinion.

2.

parties submitted supplemental briefing in which they disagree as to the effect of *Curiel* on the issues raised in this appeal.

We once again reject petitioner's arguments and affirm.

## PROCEDURAL BACKGROUND

"A jury found [petitioner] guilty of one count each of first-degree murder (. . . § 187, subd. (a)) and shooting at an occupied motor vehicle (§ 246) and five counts of attempted willful, deliberate, and premeditated murder (§§ 187, subd. (a), 664). The jury found true as to each count a criminal-street-gang allegation (§ 186.22, subd. (b)), a personal-and-intentional discharge-of-a-firearm-by-a-principal allegation (§ 12022.53, subds. (c), (e)(1)), and a personal-and-intentional discharge-of-a-firearm-by-a-principal-causing-great-bodily-injury-or-death allegation (§ 12022.53, subds. (d), (e)(1)) and found true as to the first-degree murder a discharge-of-a-firearm-from-a-vehicle special-circumstance allegation (§ 190.2, subd. (a)(21)[)] and a criminal-street-gang-special-circumstance allegation (§ 190.2, subd. (a)(22)). The trial [court] sentenced him to an indeterminate term of life without possibility of parole on the murder, to a concurrent 25[ years]-to-life term on the personal-and-intentional discharge-of-a-firearm-by-a-principal-causing-great-bodily-injury-or-death enhancement, and to a concurrent 25[ years]-to-life term on each of the attempted willful, deliberate, and premeditated murder counts."[2] (*People v. Curiel* (Aug. 11, 2009, F055935) [nonpub. opn.], fns. omitted.)[3] On appeal, this court affirmed. (*Ibid.*)

On May 1, 2019, petitioner filed a petition for resentencing on his murder conviction pursuant to section 1172.6. Counsel was appointed to represent him. As

---

[2] Petitioner's codefendant, Miguel Carisalas, was charged in the same information as petitioner, but the trial court granted both defense motions to sever. (*People v. Curiel*, *supra*, F055935.)

[3] We grant petitioner's unopposed request for judicial notice of the record on appeal in petitioner's direct appeal. (Evid. Code, § 452.)

relevant here, the People opposed the petition on the ground the jury's true finding on discharge of a firearm from a vehicle special circumstance allegation established the jury found petitioner acted with intent to kill.

The matter was heard on April 20, 2020. Petitioner's counsel orally waived petitioner's presence at the hearing. The People again argued that the jury's intent to kill finding placed petitioner outside the scope of section 1172.6. The trial court agreed and denied the petition on that basis.

## DISCUSSION

### I.  Section 1172.6 Procedure

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) "amend[ed] the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).) Relevant here, the bill amended the natural and probable consequences doctrine by requiring that a principal act with malice aforethought before he or she may be convicted of murder or attempted murder. (§ 188, subd. (a)(3); accord, *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).) Now, "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) The bill also amended the felony-murder rule by providing that a participant in a qualifying felony is liable for murder only if the victim was a peace officer in the performance of his or her duties, or the defendant was the actual killer, aided and abetted the actual killer in the commission of first degree murder with the intent to kill, or was a major participant in the felony and acted with reckless indifference to human life. (§ 189, subds. (e), (f); accord, *Strong*, at p. 708.)

Senate Bill No. 1437 also added former section 1170.95, now renumbered as section 1172.6, which provides a procedure for persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, [or] attempted murder under the natural and probable consequences doctrine" to seek vacatur of the conviction and resentencing. (§ 1172.6, subd. (a).) "[T]he process begins with the filing of a petition containing a declaration that all requirements for eligibility are met." (*Strong, supra*, 13 Cal.5th at p. 708.) Upon the filing of such petition, the court must appoint counsel, if requested. (§ 1172.6, subd. (b)(3).) After further briefing, the sentencing court must then determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subds. (a)–(c); accord, *Strong*, at p. 708.)

Our Supreme Court has emphasized that "the prima facie inquiry . . . is limited." (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) "[T]he 'prima facie bar was intentionally and correctly set very low.' " (*Id.* at p. 972.) The court may not engage in " 'factfinding involving the weighing of evidence or the exercise of discretion' " at the prima facie stage. (*Ibid.*) Rather, the court must take the petitioner's factual allegations as true and must issue an order to show cause unless the record of conviction " ' "contain[s] facts refuting the allegations made in the petition." ' " (*Id.* at p. 971.)

" 'If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.' " (*Curiel, supra*, 15 Cal.5th at p. 450.) If the trial court determines the petitioner has met his or her prima facie burden, "the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder [or attempted murder] conviction and to resentence the petitioner on any remaining counts." (*Gentile, supra*, 10 Cal.5th at p. 853; accord, § 1172.6, subds. (c), (d)(1).)

5.

We review the court's prima facie inquiry de novo.  (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

## II.    Constitutional Right To Be Personally Present at the Hearing

Petitioner contends the trial court violated his constitutional right to be personally present at the section 1172.6 prima facie hearing.  As we explain, this claim is without merit because petitioner had no constitutional right to personal presence at the prima facie hearing.

"A criminal defendant has the right under the state and federal Constitutions to be personally present and represented by counsel at all critical stages of the trial.  For purposes of the right to be present, a critical stage is 'one in which a defendant's " 'absence might frustrate the fairness of the proceedings' [citation], or 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.' " ' " (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 465 (*Bryant*).)  The statutory right to be personally present is set forth in sections 977 and 1043, and "is coextensive with the state constitutional right but can only be waived in writing." (*People v. Miranda-Guerrero* (2022) 14 Cal.5th 1, 23.)

Sentencing is considered to be a critical stage where a defendant has a right to be present.  (See *People v. Doolin* (2009) 45 Cal.4th 390, 453.)  Likewise, resentencing, in which the court exercises its discretionary sentencing authority, is another critical stage.  (*People v. Simms* (2018) 23 Cal.App.5th 987, 996; see *People v. Rouse* (2016) 245 Cal.App.4th 292, 300.)  The initial section 1172.6 prima facie determination, however, is not a critical stage to which a right of personal presence attaches.  It is merely an initial resentencing eligibility determination based on uncontested facts contained in the petition and the record of conviction.  The prima facie determination involves a question of law

and does not involve the exercise of the court's discretionary sentencing authority.[4] (See *Lewis*, *supra*, 11 Cal.5th at p. 966 [the substantive question at the prima facie stage is whether the petitioner is ineligible for relief as a matter of law]; *People v. Perry* (2006) 38 Cal.4th 302, 312 ["[A] defendant may ordinarily be excluded from conferences on questions of law, even if those questions are critical to the outcome of the case, because the defendant's presence would not contribute to the fairness of the proceeding."].) There was therefore no possibility petitioner's absence would frustrate the fairness of the proceedings. (See *Bryant*, *supra*, 60 Cal.4th at p. 465; accord, *Perry*, at p. 312.) Accordingly, petitioner had no constitutional right to be personally present at the prima facie hearing and the court did not err in ruling in his absence.

Furthermore, even if we were to conclude the trial court erred in proceeding in petitioner's absence, reversal would not be warranted. Our Supreme Court has held that the erroneous exclusion of a defendant from criminal proceedings is " 'trial error that is reversible only if the defendant proves prejudice.' " (*People v. Miranda-Guerrero*, *supra*, 14 Cal.5th at p. 23.) Here, petitioner argues that his exclusion from the prima facie hearing deprived him of the opportunity to inform his counsel he was convicted of murder under a theory of transferred intent and of attempted murder under a deficient "kill zone" theory. However, as we explain below, transferred intent remains a valid theory of murder liability and petitioner therefore is ineligible for resentencing on his murder conviction as a matter of law. Moreover, his attempted murder convictions are not properly before us. Accordingly, petitioner has failed to prove he was prejudiced by his exclusion from the prima facie proceedings.

---

[4] In contrast, some courts have found a right to personal presence at the section 1172.6 *evidentiary* hearing. (E.g., *People v. Quan* (2023) 96 Cal.App.5th 524, 532–534; *People v. Basler* (2022) 80 Cal.App.5th 46, 51, 57–60.)

**III.** **Petitioner Is Ineligible for Resentencing on His Murder Conviction**

In his initial briefing, petitioner argued he was convicted of murder under an imputed malice theory eliminated by Senate Bill No. 1437 because he was convicted under the doctrine of transferred intent. In supplemental briefing filed following transfer of the matter from the Supreme Court, petitioner additionally argues that the jury's true findings on the special circumstances do not establish he was convicted of murder under a valid theory. He further argues the remaining instructions and verdict do not establish he was convicted under a valid theory. We conclude the record establishes the jury found every element of the offense of murder under a valid theory. Accordingly, petitioner is ineligible for resentencing as a matter of law and the petition was properly denied.

**A.** **Applicable Law**

A petitioner who was convicted of murder under a felony murder, natural and probable consequences, or other imputed malice theory may be eligible for resentencing pursuant to section 1172.6. (§ 1172.6, subd. (a).) However, a petitioner who was convicted of murder is ineligible for resentencing as a matter of law if the record establishes the jury found every element of the offense under a valid theory, such as direct aiding and abetting with express or implied malice. (See *Curiel*, *supra*, 15 Cal.5th at p. 463.)

"In general, to establish liability for murder under the theory of direct aiding and abetting, 'the prosecution must show that the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission.' [Citation.] In addition, . . . an aider and abettor may be liable for murder under a theory of implied malice where the aider and abettor aids in the commission of a life-endangering act, with ' "knowledge that the perpetrator intended to commit the act, intent to aid the perpetrator in the commission of the act, knowledge that the act is dangerous to human life, and acting in conscious disregard for human life." ' [Citation.] 'Thus, proof

of aider and abettor liability requires proof in three distinct areas:  (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea'—which here includes knowledge that the direct perpetrator intends to commit the crime or life-endangering act, 'and (c) the aider and abettor's actus reus— conduct by the aider and abettor that in fact assists the achievement of the crime.' " (*Curiel*, *supra*, 15 Cal.5th at pp. 466–467.)

In *Curiel*, our Supreme Court considered whether a jury's true finding on a gang-murder special circumstance conclusively established the petitioner's ineligibility for resentencing under section 1172.6.  (*Curiel*, *supra*, 15 Cal.5th at pp. 440–441.)  The high court held that the trial court was bound by the jury's true finding on the gang-murder special circumstance, and specifically its finding that the petitioner acted with intent to kill, for purposes of assessing the petitioner's resentencing eligibility.  (*Ibid*.)  However, "[t]he jury's finding of intent to kill [did] not, itself, conclusively establish that [the petitioner] [was] ineligible for relief."  (*Id.* at p. 441.)  More specifically, the intent-to-kill finding did not establish the mens rea nor the actus reus required for murder liability as a direct aider and abettor.  (*Ibid*.)

The court further concluded that the jury's remaining findings also were insufficient to rebut the petitioner's allegations and to conclusively establish he was ineligible for relief.  (*Curiel*, *supra*, 15 Cal.5th at pp. 441, 465.)  First, the court noted that the jury was instructed on the natural and probable consequences doctrine, including two underlying target offenses.  (*Id.* at p. 466.)  Further, the jury was not required to identify the theory of liability it found persuasive, nor was it required to find that the petitioner knew of the direct perpetrator's unlawful purpose or intended to commit, encourage, or facilitate that purpose.  (*Id.* at pp. 467, 469.)  The high court surmised that the jury could have found that the petitioner knew that the perpetrator "intended to commit one of the underlying target offenses and also intended to aid him in that offense."  (*Id.* at p. 470.)  However, the jury was not required to find that the petitioner

9.

subjectively appreciated that the conduct he intended to aid was dangerous to human life. (*Ibid.*)  The jury's intent-to-kill finding did not establish that the petitioner knew the perpetrator intended to commit a life-endangering act or that the petitioner intended to aid in that act.  (*Ibid.*)

**B.    Analysis**

Petitioner's jury convicted him of first degree murder.  To do so, the jury was required to find the People had proven at least one of two theories of aiding and abetting express malice murder:  deliberation and premeditation, or discharge of a firearm from the perpetrator's motor vehicle.

To find petitioner guilty under a theory of deliberation and premeditation, the jury was required to find:

> "1.  The perpetrator committed [the] crime of murder with malice aforethought;

> "2.  The perpetrator intended to cause the death of another person[;]

> "3.  The perpetrator acted willfully, deliberately and with premeditation in causing the death;

> "4.  [Petitioner] aided and abetted the perpetrator in the killing;

> "5.  [Petitioner] intended to aid and abet the perpetrator and intended to cause the death of a person;

> "6.  [Petitioner] was aware of the purpose of the perpetrator to cause death[;]

> "7.  When [petitioner] acted to aid and abet in the intentional killing, the defendant acted willfully with deliberation and premedi[]tation[;]

> "AND

> "8.  [Petitioner] aided and abetted the perpetrator in the commission of the act causing death before or at the time of the commission of the act causing death."

To find petitioner guilty under a theory of discharge of a firearm from the perpetrator's motor vehicle, the jury was required to find:

> "1.  The perpetrator shot a firearm from a motor vehicle;
>
> "2.  The perpetrator intentionally shot at a person who was outside the perpetrator's vehicle;
>
> "3.  The perpetrator intended to cause death;
>
> "4.  [Petitioner] was aware the perpetrator intended to shoot a person outside of the perpetrator's vehicle;
>
> "5.  [Petitioner] was aware the perpetrator intended to kill a person outside the vehicle;
>
> "6.  Being aware of the perpetrator's intent [petitioner] intentionally acted and, in doing so, aided and abetted the perpetrator in the killing;
>
> "AND,
>
> "7.  [Petitioner] aided and abetted the perpetrator in the commission of the act causing death before or at the time of the commission of the act causing death."

The instruction on aiding and abetting explained:  "Someone *aids and abets* a crime if he knows of the perpetrator's unlawful purpose and he specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

Under either theory of first degree murder, the jury was required to find, in relevant part, that (a) the perpetrator committed express malice murder; (b) petitioner knew the perpetrator intended to cause death and intended to aid and abet the perpetrator in causing the death; and (c) petitioner did aid and abet the commission of the act causing death.  The jury's findings on the special circumstance allegations likewise establish that petitioner aided and abetted in the murder with intent to kill.  Together, these findings, which were necessary to the jury's verdict, establish that the jury found every element of the offense of murder under a valid theory, i.e., direct aiding and abetting of express

11.

malice murder.[5]  The instructions and verdict foreclose any possibility that petitioner was convicted under an imputed malice theory eliminated by Senate Bill No. 1437.

Nevertheless, petitioner argues he may have been convicted under a natural and probable consequences theory because the jury was instructed, in the general instruction on murder, that petitioner could be found guilty of murder with malice aforethought if "[i]n aiding and abetting the commission of the act that caused death, [petitioner] intended to cause death, OR,  [¶]  the natural consequences of the act were dangerous to human life, and, the defendant in aiding and abetting the commission of the act that caused death was aware the natural consequences of the act were dangerous to human life."  As an initial matter, we note that this reference to "natural consequences" that are dangerous to human life does not describe a natural and probable consequences or other imputed malice theory of murder, but rather describes implied malice.  (*People v. Cravens* (2012) 53 Cal.4th 500, 507.)  Direct aiding and abetting implied malice murder remains a viable theory of murder.  (See *Curiel*, *supra*, 15 Cal.5th at p. 462.)  Regardless, the jury's verdict makes clear that petitioner was found guilty of first degree murder under an express malice theory, rather than an implied malice theory.

Petitioner also argues he may have been convicted under an imputed malice theory because the jury was instructed on transferred intent.  As petitioner recognizes, this court recently rejected this argument in *People v. Lopez* (2024) 99 Cal.App.5th 1242, 1250 (*Lopez*).  "When intent to kill is at issue in murder, it may be proven through the doctrine of transferred intent."  (*People v. Vasquez* (2016) 246 Cal.App.4th 1019, 1025.)  " 'Under the classic formulation of California's common law doctrine of transferred intent, a defendant who shoots with the intent to kill a certain person and hits a bystander instead is subject to the same criminal liability that would have been imposed had " 'the fatal

---

[5] We therefore do not consider petitioner's arguments regarding second degree felony murder or aiding and abetting implied malice murder.

blow reached the person for whom intended.' " [Citation.]  In such a factual setting, the defendant is deemed as culpable as if he had accomplished what he set out to do.' " (*People v. Bland* (2002) 28 Cal.4th 313, 320–321.)  Thus, to be convicted of murder under a transferred intent theory, the defendant must act with intent to kill when committing the act that caused death.

Nonetheless, petitioner relies on *People v. Concha* (2009) 47 Cal.4th 653, 664, for the proposition that the transferred intent doctrine involves imputed malice.  There, the high court stated:

> "We note that the doctrine of transferred intent occasionally has been used to explain a defendant's liability in provocative act murder cases. Under the 'classic formulation' of the transferred intent doctrine, where a defendant intends to kill a victim but misses and instead kills a bystander, *the intent to kill the intended victim is imputed to the resulting death of the bystander* and the defendant is liable for murder.  [Citations.]  However, under the transferred intent doctrine, the defendant's intent is not actually transferred from the intended victim to the unintended victim.  'Rather, as applied here, [the transferred intent doctrine] connotes a *policy*—that a defendant who shoots at an intended victim with intent to kill but misses and hits a bystander instead should be subject to the same criminal liability that would have been imposed had he hit his intended mark.'  [Citation.] ' "For purposes of applying the rule of transferred intent, it does not matter whether defendant himself fired the fatal shot or instead induced or provoked another to do so; in either situation, defendant's culpable mental state is determined as if the person harmed were the person defendant meant to harm." ' " (*Id.* at p. 664, first italics added.)

*Lopez* rejected the argument that the use of the word "imputed" in *Concha* equates to a determination that the doctrine of transferred intent violates current law:  "We disagree that the word 'imputed' in the *Concha* opinion establishes that [the defendant] was improperly convicted of murder.  The high court in *Concha* made it very clear that, based on policy reasons, ' "a defendant who shoots at an intended victim with intent to kill but misses and hits a bystander instead should be subject to the same criminal liability that would have been imposed had he hit his intended mark."  [Citation.]'

13.

[Citation.] We have already held that nothing suggests the Legislature intended to eliminate the doctrine of transferred intent when it enacted Senate Bill [No.] 1437. *Concha* used the word 'imputed' almost a decade before Senate Bill [No.] 1437 went into effect. Cases are not authority for propositions not considered or decided." (*Lopez*, *supra*, 99 Cal.App.5th at p. 1251.)

Finally, we acknowledge that the jury was instructed that, "[u]nder some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime." However, the instructions provided no further direction regarding the "specific circumstances" under which the jury might apply this principle and, as stated, the instructions on first degree murder required the jury to find all elements of murder under a valid theory. Accordingly, this instruction does not undermine our conclusion that the instructions and verdict establish petitioner is ineligible for resentencing as a matter of law.[6]

## IV. Attempted Murder Convictions

Petitioner contends he is entitled to resentencing on his attempted murder convictions because they were obtained under deficient "kill zone" instructions that did not require the jury to find he had the intent to kill everyone in the zone of fatal harm. Petitioner did not seek resentencing on his attempted murder convictions in the trial court and raises this issue for the first time on appeal.

At the time petitioner filed his petition, former section 1170.95 did not expressly permit a petition for resentencing on convictions for attempted murder. (Former § 1170.95, subd. (a).) However, former section 1170.95 later was amended to "[c]larif[y] that persons who were convicted of attempted murder or manslaughter under a theory of

---

[6] We therefore conclude remand is unwarranted and we do not consider petitioner's argument that his youth should be considered in any sentencing proceedings on remand.

14.

felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Sen. Bill No. 775 (2021–2022 Reg. Sess.); Stats. 2021, ch. 551, § 1, subd. (a).) These amendments took effect on January 1, 2022.

Because petitioner did not seek relief on his attempted murder convictions in the trial court, we do not address his resentencing eligibility on these counts. As we stated in our initial opinion, petitioner may file a separate petition for resentencing on his attempted murder convictions in the trial court, if desired. Petitioner retains any remedies available to him in the trial court.

## **DISPOSITION**

The order denying the section 1172.6 petition for resentencing is affirmed.